## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90127 (DRJ)** |
| | § | |
| **HEARTBRAND HOLDINGS, INC.,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| | § | **(Joint Administration Requested)** |
| **Debtors.**[1] | § | **(Emergency Hearing Requested)** |

## EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS, (B) CONTINUE USING EXISTING CHECKS AND BUSINESS FORMS, (C) MAINTAIN THEIR CORPORATE CARD PROGRAM, AND (D) CONTINUE INTERCOMPANY TRANSACTIONS, (II) PROVIDING ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 3:00 P.M. (CENTRAL TIME) ON TUESDAY, AUGUST 2, 2022.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 2, 2022 AT 3:00 P.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: HeartBrand Holdings, Inc. (2575); American Akaushi Association, Inc. (3331). The location of the Debtors' service address is: P.O. Box 309, Flatonia, TX 78941.

**CONFERENCE ROOM NUMBER. JUDGE JONES'S CONFERENCE ROOM NUMBER IS 205691. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE JONES'S HOME PAGE. THE MEETING CODE IS "JUDGEJONES". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING. HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JONES'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), file this *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue Using Existing Checks and Business Forms, (C) Maintain Their Corporate Card Program, and (D) Continue Intercompany Transactions, (II) Providing Administrative Expense Priority Status for Postpetition Intercompany Claims, and (III) Granting Related Relief* (the "***Motion***") and in support respectfully submit the following:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

US 9124063

3.      The statutory bases for the relief requested herein are sections 105(a), 345, 363, and 503 of title 11 of the United States Code (the "***Bankruptcy Code***"), Bankruptcy Rules 6003 and 6004, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Local Rules***").

## EMERGENCY CONSIDERATION

4.      In accordance with Local Rule 9013-1, the Debtors request emergency consideration of this Motion.  The Debtors submit that an immediate and orderly transition into chapter 11 is critical to the viability of their operations and the success of these chapter 11 cases.  As discussed in detail below and in the First Day Statement (as defined below), any delay in granting the relief requested could hinder the Debtors' operations and cause immediate and irreparable harm.  As such, the Debtors believe that emergency consideration is necessary and request that this Motion be heard at the Debtors' first day hearings.

## BACKGROUND

5.      HeartBrand Holdings, Inc. ("***HBI***," together with its subsidiaries, "***HeartBrand***" or the "***Company***") acquires, develops, and markets Akaushi cattle and beef through its cooperating ranches in Texas and the United States.  Akaushi cattle are a type of Japanese cattle known for its highly-marbled and exceptionally flavorful beef.  HeartBrand's headquarters are located in Flatonia, Texas and its operations span a fully-integrated process that begins with breeding and raising Akaushi cattle and continues through the sale of high-quality beef nationwide.  HeartBrand subsidiaries also own a large herd of Akaushi cattle.  American Akaushi Association, Inc. ("***AAA***") is a wholly-owned subsidiary of HBI that assists breeders with market development, genetic testing, herd reporting, and breed management to maintain and enhance the Akaushi breed.

6.      On August 1, 2022 (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses

3

and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

7.      Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' reasons for and objectives of these chapter 11 cases, is set forth in the *Debtors' Statement in Support of Chapter 11 Filing* (the "***First Day Statement***"), filed contemporaneously herewith and incorporated herein by reference.[2]

## RELIEF REQUESTED

8.      By this Motion, the Debtors seek entry of an interim order (the "***Interim Order***"), substantially in the form attached hereto as **Exhibit A**, and subsequently a final order (the "***Final Order***"), substantially in the form attached hereto as **Exhibit B**,  (i) authorizing the Debtors to: (a) continue to operate their cash management system and maintain existing bank accounts; (b) continue using their existing checks and business forms; (c) maintain their corporate card program; and (d) continue to engage in intercompany transactions, (ii) providing administrative expense priority for postpetition intercompany claims and (iii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the Petition Date to consider approval of this Motion on a final basis.

## THE DEBTORS' CASH MANAGEMENT SYSTEM

### A.      Overview of the Cash Management System

9.      In the ordinary course of business, the Company manages its cash, receivables, and payables through a cash management system (the "***Cash Management System***") in which each

---

[2]     Capitalized terms used but not otherwise defined in this Motion shall have the meaning set forth in the First Day Statement.

US 9124063

entity has at least one individual bank account (collectively the "***Bank Accounts***").  Operational and overhead expenses are paid through a central bank account controlled by HeartBrand Management Services, Inc. ("***HBM***"), which is reimbursed by the Company's other entities for individual costs as well as proportional shared services.  The Debtors use the Cash Management System to efficiently collect, transfer, concentrate, and disburse funds generated from their operations.  The Cash Management System also enables the Debtors to monitor the collection and disbursement of funds and the administration of their Bank Accounts, which are maintained at one bank, First National Bank of Shiner ("***FNB***" or the "***Bank***").  The Debtors are able to accurately trace the funds through their Cash Management System to ensure that all transactions are adequately documented and readily ascertainable, including in connection with the intercompany transactions more fully described below.  The Debtors will maintain their books and records relating to the Cash Management System consistent with their practices prior to the Petition Date. Accordingly, the Debtors will be able to accurately document, record, and track the transactions occurring within the Cash Management System for the benefit of their bankruptcy estates and for all parties in interest.

US 9124063

**B.**     **The Bank Accounts**

10.     A brief description of the Debtors' Bank Accounts and HBM's Bank Account is provided in the table directly below:

| Accounts | Description of Accounts |
|---|---|
| *HeartBrand Holdings, Inc.* | |
| **HBI Account**<br>Account ending in 0241<br>First National Bank of Shiner | The HBI Account is the main operating account for HBI's direct expenses and receives funds from the HBM account because it has no independent source of revenue other than its subsidiaries. |
| *American Akaushi Association, Inc.* | |
| **AAA Account**<br>Account ending in 0641<br>First National Bank of Shiner | The AAA Account receives receipts from AAA's membership program and pays expenses related to its operations. |
| **AAA Jr. Account**<br>Account ending in 0658<br>First National Bank of Shiner | The AAA Jr. Account was established to collect receipts from AAA's junior membership program and pays expenses related to AAA's operations. |
| *HeartBrand Management Services, Inc. (Non-Debtor Affiliate)* | |
| **HBM Account**<br>Account ending in 0633<br>First National Bank of Shiner | The HBM Account serves as the Company's main operating account and pays common operational and overhead costs such as office expenses, shared utilities, and payroll and is repaid for direct expenses and proportional costs from the Company's other entities. |

11.     The Debtors respectfully request that the Court (i) authorize the Debtors to continue to operate their Cash Management System and maintain and continue to use the Bank Accounts, and (ii) authorize the Banks to maintain, service, and administer the Bank Accounts without interruption and in the ordinary course of business.  The Debtors request that the Banks be authorized to receive, process, honor, and pay any and all checks, drafts, wires, credit card payments, ACH transfers, and other instructions, payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions, provided that sufficient funds are on deposit in the applicable Bank Accounts to cover such payments.  Notwithstanding the foregoing, any check, advice, draft, or other notification that the

US 9124063

Debtors advise the Banks to have been drawn or otherwise presented before the Petition Date may be honored by the Banks only if authorized by order of the Court.

## C. Compliance with Section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines

  i.  *Section 345 of the Bankruptcy Code*

  12.  All of the Debtors' Bank Accounts are maintained at a Bank that is insured by the Federal Deposit Insurance Corporation (the "***FDIC***") and, therefore, comply with section 345(b) of the Bankruptcy Code.

  ii.  *U.S. Trustee Guidelines*

  13.  The Office of the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***") has established certain operating guidelines (the "***U.S. Trustee Guidelines***") for debtors in possession.[3]  The U.S. Trustee Guidelines require, among other things, that upon the filing of a bankruptcy petition, a debtor must immediately close all of its existing bank accounts and open new bank accounts that are designated as debtor-in-possession accounts with authorized depositories whose deposits are insured by the FDIC and who agree to comply with the requirements of the U.S. Trustee's office.  The U.S. Trustee Guidelines further require debtors to maintain one account solely for the purpose of setting aside estate monies required for the payment of taxes and another separate account for cash collateral.

  14.  Here, the Debtors maintain the majority of their deposits with FNB, which is not an authorized depository institutions in the Southern District of Texas.  The Debtors' Bank Accounts maintained by FNB had a combined value of approximately $82,673.03 as of June 30, 2022.  Re-establishing these accounts in the future at other institutions may prove costly for the Debtors and would materially hinder their operations and businesses because the Debtors

---

[3] *See Guidelines for Debtors-in-Possession*, U.S. Department of Justice, United States Trustee Program, Region 7, *available at* https://www.justice.gov/ust-regions-r07/file/r07_dip_guidelines.pdf/download.

frequently rely on intercompany transfers with non-debtor entities in the ordinary course of business.  The Debtors respectfully request that the Court authorize the Debtors to maintain, service, and administer the Bank Accounts maintained by FNB, without interruption and in the ordinary course of business, notwithstanding the fact that FNB is not an authorized depository institution under the U.S. Trustee Guidelines.

**D.**    **Business Forms**

15.    As part of the Cash Management System, the Debtors utilize numerous preprinted checks and business forms (the "***Checks and Business Forms***") in the ordinary course of their business.  To minimize expenses to their estates and avoid confusion on the part of employees, customers, and vendors during the pendency of these chapter 11 cases, the Debtors request that the Court authorize their continued use of all correspondence and Checks and Business Forms (including, without limitation, letterhead, purchase orders, invoices, and preprinted and future checks) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors-in-possession, rather than requiring the Debtors to incur the expense and delay of ordering entirely new Checks and Business Forms as required under the U.S. Trustee Guidelines.  To the extent the Debtors exhaust their existing supply of Checks and Business Forms during these chapter 11 cases, the Debtors will transition to using Checks and Business Forms with the designation "debtor-in-possession" and the corresponding bankruptcy case number on all such forms.

**E.**    **Corporate Card Program**

16.    As part of the Cash Management System, and in the ordinary course of business, the Debtors maintain company paid credit cards (the "***Corporate Cards***") that are utilized to pay for certain work-related expenses, such as work-related travel, fuel charges, and other small, non-recurring purchases made on behalf of the Debtors (collectively, the "***Corporate Card***

8

*Program*").   The Corporate Cards are issued by Capital One Visa (the "***Corporate Card Provider***").  As of the Petition Date, approximately 35 Corporate Cards have been issued to the Company's employees, five of which are specific to the Debtors' employees.

17.     In general, Corporate Cards are issued to employees for use on the Company's behalf for the payment of business related expenses and verified through receipts.  The Debtors receive monthly statements for purchases (the "***Corporate Card Expenses***") made with the Corporate Cards in the preceding month.  Once the Debtors verify such purchases, the approved Corporate Card Expenses automatically draft from HBM's bank account on the first of the month and are deducted at the end of the month from AAA and HBI's respective accounts.  As of the Petition Date, the Debtors estimate that there are no accrued but unpaid Corporate Card Expenses.

18.     Use of the Corporate Cards is an integral part of the Debtors' Cash Management System and continuation of the ability of the Debtors' employees to use the Corporate Cards for procurement is essential to the continued operation of the Debtors' businesses.  The Debtors' inability to maintain the Corporate Card Programs could impose a hardship on the continued operation of the Debtors' businesses.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue such Corporate Card Programs in the ordinary course of business and to pay any prepetition or postpetition Corporate Card Expenses or fees with respect the Corporate Card Programs.

F.      **Intercompany Transactions**

19.     In the ordinary course of business, the Debtors maintain business relationships with each other and among certain of their non-Debtor affiliates (the "***Non-Debtor Affiliates***"), conducting intercompany transactions (collectively, the "***Intercompany Transactions***") from time to time that result in intercompany receivables and payables ("***Intercompany Claims***").  The Debtors and Non-Debtor Affiliates track all fund transfers in their respective accounting systems

US 9124063

and can ascertain, trace, and account for all Intercompany Transactions and will continue to do so postpetition.

i.   *Intercompany Transfers Among the Debtors and Non-Debtor Affiliates*

20.     At any given time there may be Intercompany Claims owing by one Debtor to another Debtor and among non-debtor entities.  Intercompany Transactions are made periodically to reimburse certain Debtors for various expenditures associated with their businesses and to fund certain Debtors' accounts in anticipation of such expenditures, as needed.  For example, in the operation of the Cash Management System, HBM, a non-Debtor Affiliate makes weekly payroll expenditures for AAA's employees, but is reimbursed for accrued costs monthly by AAA for the expenses incurred.

ii.   *Intercompany Transactions are Necessary*

21.     The Intercompany Transactions are necessary due to the corporate structure of the Debtors.  This system not only maximizes efficiency but also simplifies third-party interactions with the Debtors as an enterprise.  If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations would be unnecessarily disrupted to the detriment of the Debtors, their creditors, and other stakeholders.  Thus, the Debtors submit that continuing the Intercompany Transactions is essential and is in the best interests of the Debtors' respective estates and creditors.  To minimize business disruptions and preserve value for the Debtors' estates, the Debtors seek authority to continue the Intercompany Transactions in the ordinary course of business postpetition, consistent with the Debtors' customary prepetition practices.

US 9124063

## BASIS FOR RELIEF REQUESTED

**A.    The Court Should Approve the Debtors' Continued Use of the Bank Accounts and Cash Management System as Essential to the Debtors' Operations and Restructuring Efforts**

22.    In order to supervise the administration of chapter 11 cases, the U.S. Trustee Guidelines generally require chapter 11 debtors to:

    i.    close all existing bank accounts and open new debtor-in-possession bank accounts, including an operating account, tax account, and payroll account (as applicable);

    ii.    obtain and utilize new checks for all debtor-in-possession accounts that bear the designation "Debtor in Possession" and the Debtor's bankruptcy case number;

    iii.    deposit all receipts and make all disbursements only though the approved debtor-in-possession accounts, with any funds in excess of those required for current operations being maintained in an interest-bearing account;

    iv.    deposit to the tax debtor-in-possession account sufficient funds to pay any tax liability (when incurred); and

    v.    deposit all estate funds into an account with a financial institution that agrees to comply with the requirements of the U.S. Trustee and is an authorized depository approved by the U.S. Trustee.[4]

23.    As set forth above, the Debtors request authority to maintain their existing Bank Accounts and operate their Cash Management System, consistent with their ordinary course practices prior to the Petition Date, and to implement ordinary course changes to the Cash Management System consistent with such prepetition practices.  Such relief is appropriate under sections 363(c) and 105(a) of the Bankruptcy Code.

24.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).   The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a

---

[4]    *See Region 7 Guidelines for Debtors-in-Possession* at §§ IV(A)-(F).

US 9124063

debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the bankruptcy court.  *See In re HLC Props., Inc.*, 55 B.R. 685, 686 (Bankr. N.D. Tex. 1985) (finding "no need to further burden the docket or the staff of the Court with a superfluous order" when a transaction is in the ordinary course of business); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.  *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).  A cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets." *In re Southmark Corp*., 49 F.3d 1111, 1114 (5th Cir. 1995).  Accordingly, section 363(c)(1) of the Bankruptcy Code authorizes the continuation of the Cash Management System as it operated prepetition without the Court's approval.

25.     Even if continuation of the Cash Management System and other relief requested herein were outside of the ordinary course of business, the Court may grant such relief pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons.  *See, e.g.*, *In re BNP Petrol. Corp.,* 642 F. App'x 429, 435 (5th Cir. 2016); *In re Cont'l Air Lines,* 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the

12

debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

26. Section 105(a) of the Bankruptcy Code also authorizes this Court to permit the Debtors to continue to use the Cash Management System, including the maintenance of their existing Bank Accounts. Section 105(a) of the Bankruptcy Code vests this Court with the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts consistently recognize that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"). Therefore, it is within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

27. Here, requiring the Debtors to adopt new cash management systems and open new bank accounts at the same or different depository institutions would be expensive, impose needless administrative burdens on the Debtors, and would cause undue disruption to the Debtors' operations. Any such disruption would have a severe and adverse impact upon the Debtors' ability to navigate these chapter 11 cases, adversely affecting the Debtors' ability to maintain and

US 9124063

maximize value for the benefit of creditors and other parties in interest.  Moreover, such a disruption would be wholly unnecessary insofar as the continued use of the Debtors' Bank Accounts and Cash Management System provides a safe, efficient, and established means for the Debtors to maintain and manage their cash.

28.     The Debtors submit that a waiver of certain of the requirements of the U.S. Trustee Guidelines is appropriate.  Maintenance of the Bank Accounts and Cash Management System will minimize the disruption to the Debtors' operations and promote an orderly and efficient transition into chapter 11.  Such benefits are entirely consistent with the goals underlying the U.S. Trustee Guidelines.  The Cash Management System constitutes an ordinary-course and essential business practice providing significant benefits to the Debtors, including the ability to control corporate funds, ensure the maximum availability of funds when and where necessary, reduce borrowing costs and administrative expenses by facilitating the movement of funds, and ensure the availability of timely and accurate account balance information consistent with prepetition practices.

29.     Accordingly, the Debtors request authority to:  (a) maintain and continue to use any or all of their existing Bank Accounts (listed above) in the names and with the account numbers existing immediately prior to the commencement of these chapter 11 cases, provided that the Debtors reserve the right to close some or all of their existing accounts and/or open new debtor-in-possession accounts upon providing written notice to the U.S. Trustee; (b) deposit funds in and withdraw funds from any such accounts by all usual means, including checks, wire transfers, ACH transfers, electronic funds transfers, or other debits; and (c) treat their existing accounts (and any accounts opened postpetition) for all purposes as debtor-in-possession accounts.

US 9124063

30.     As set forth above, to ensure that all transfers and transactions will be documented in their books and records, the Debtors will continue to maintain records of all transfers within the Cash Management System and use the Debtors' historical practices to administer the Bank Accounts.

31.     Bankruptcy courts in the Fifth Circuit have routinely granted authority for a debtor's continued use of its existing cash management procedures and policies, particularly where the entities involved a large and complex organization.  *See e.g., In re GWG Holdings, Inc.*, No. 22-90032 (MI) (Bankr. S.D. Tex. July 18, 2022); *In re Sungard AS New Holdings, LLC*, No 22-90018 (DRJ) (Bankr. S.D. Tex. May 11, 2022); *In re Carlson Travel, Inc.*, No. 21-90017 (MI) (Bankr. S.D. Tex. Nov. 12, 2021); *In re Basic Energy Serv., Inc.*, No. 21-90002 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2021); *In re Seadrill Limited*, No. 21-30427 (DRJ) (Bankr. S.D. Tex. March 8, 2021); *In re Sundance Energy, Inc.*, No. 21-30882 (DRJ) (Bankr. S.D. Tex. March 9, 2021); *In re Unit Corp.*, No. 20-32740 (DRJ) (Bankr. S.D. Tex. June 18, 2020).  The same relief is also appropriate here.  Accordingly, the Court should authorize the Debtors to continue the use of the Bank Accounts and the Cash Management System.

**B.     A Waiver of Certain Requirements of the U.S. Trustee Guidelines Is Appropriate Under the Circumstances and Will Minimize Disruptions to the Debtors' Business During the Transition to Chapter 11.**

32.     The Debtors request that the Court waive certain requirements of section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines and allow the Debtors to continue using their existing Bank Accounts.

33.     Section 345(a) of the Bankruptcy Code authorizes deposits of money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the

15

full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires debtors to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety. A court may, however, relieve a debtor-in-possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause." 11 U.S.C. § 345(b). Here, all Bank Accounts are maintained at a Bank that is insured by the FDIC and, therefore, comply with section 345(b) of the Bankruptcy Code.

34.     Additionally, the U.S. Trustee Operating Guidelines generally require chapter 11 debtors to, among other things, deposit all of their estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee. The Debtors' three Bank Accounts are held at FNB, which is not an authorized depository but is a well-capitalized regional banking institution. Moreover, all of the Debtors' Bank Accounts held at FNB are FDIC insured, and the balances of such accounts are below the FDIC threshold. Re-establishing these accounts may prove costly for the Debtors and limit optionality for their business operations. The Debtors respectfully request that the Court authorize the Debtors to maintain, service, and administer the Bank Accounts maintained by FNB, without interruption and in the ordinary course of business.

**C.     A Waiver of the Requirement Regarding Checks and Business Forms Is Appropriate Under the Circumstances.**

35.     To avoid disruption of the Cash Management System and unnecessary expense, the Debtors seek a waiver of the requirement to immediately purchase new Checks and Business Forms that include the term "debtor-in-possession" and the case number assigned to these chapter 11 cases. The Debtors have an inventory of Checks and Business Forms for the Bank Accounts that would go to waste if new checks were to be ordered and used. Additionally, requiring the

Debtors to obtain new checks, which bear the designation "debtor-in-possession," for the Bank Accounts would cause the Debtors to incur undue expense and delay.

36.    The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Checks and Business Forms substantially in the forms existing immediately before the Petition Date.  The Debtors intend to seamlessly and efficiently transition through chapter 11.  Accordingly, to preserve funds and assist in the efficient administration of the Estates, the Debtors seek authority to use pre-existing Checks and Business Forms with respect to the Bank Accounts.

**D.    The Court Should Authorize the Debtors to Maintain Their Corporate Card Programs and to Pay All Obligations Related Thereto.**

37.    Under section 363(c)(1) of the Bankruptcy Code, a debtor-in-possession "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business . . . and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  Furthermore, section 364(a) of the Bankruptcy Code permits a debtor in possession to "obtain unsecured credit and incur unsecured debt in the ordinary course of business" without a court order.  11 U.S.C. § 364(a).  Purchases made using the Corporate Cards fall within the ordinary course of business under section 363(c)(1) of the Bankruptcy Code.  The use of credit cards, fuel cards, and similar payment methods is widespread at companies across the United States as a means of facilitating day-to-day business activities.  As a result, the Debtors believe that they do not require the Court's approval to continue using the Corporate Cards in connection with the Corporate Card Programs.

38.    Nevertheless, out of an abundance of caution, the Debtors request authority to continue the Corporate Card Program in the ordinary course of business, and pay all postpetition obligations related thereto.  In the event that the Court finds that such transactions do not fall within

17

the ordinary course of business, the Debtors request authority pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code.  Further, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, the Debtors request authority to pay any prepetition obligations related to the Corporate Card Programs.

39.     Continued use of the Corporate Cards is integral to the success and stability of the Debtors' business.  The Debtors rely on the ability of their employees to pay for expenses incurred in the ordinary course of business and to make other reasonable work-related purchases necessary to fulfill their day-to-day professional obligations.  If the Debtors do not pay outstanding amounts owed, there is significant risk that the Corporate Card Provider (i) could set-off amounts owed against cash in the Debtors' Bank Accounts they maintain and (ii) could restrict the Debtors' access to their Corporate Card Program.  Indeed, if the Debtors do not pay prepetition obligations owed to the Corporate Card Provider, they will likely not continue to extend credit to the Debtors after the Petition Date.

40.     Without the Corporate Card Program, the Debtors' employees would likely either have to pay for the upfront costs of business travel and corporate expenses and then wait for reimbursement or lose the ability to pay for such business expenses.  In either case, the Debtors' operational effectiveness would suffer.  Accordingly, the Debtors should be authorized to continue using the Corporate Card, and to pay any prepetition amounts outstanding thereunder, as such relief will help minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' business.

41.     Courts in this district and others have permitted debtors to continue using their existing corporate credit cards, purchasing cards, and similar programs.  *See, e.g.*, *In re Basic Energy Serv. Inc.*, No 21-90002 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2021); *In re Sundance Energy,*

*Inc.*, No. 21-30882 (DRJ) (Bankr. S.D. Tex. March 9, 2021); *In re Lilis Energy, Inc.*, No. 20-33274

(Bankr. S.D. Tex. Aug. 14, 2020); *In re Unit Corporation*, No. 20-32740 (DRJ) (Bankr. S.D. Tex.

June 17, 2020); *In re McDermott International, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex. Jan.

23, 2020).   The same relief is appropriate here.   Accordingly, the Court should authorize the

Debtors to continue the Corporate Card Program and to pay all obligations outstanding, including

prepetition obligations, if any, related thereto.

E.   **The Court Should Authorize Continued Performance of Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims.**

42.      As described above, the Debtors routinely engaged in Intercompany Transactions

prior to the Petition Date, and absent authority to continue engaging in Intercompany Transactions

in the ordinary course of business, the Debtors' continued operations would be placed in jeopardy.

In general, under section 363(c)(1) of the Bankruptcy Code, a debtor in possession "may enter into

transactions, including the sale or lease of property of the estate, in the ordinary course of business

. . . and may use property of the estate in the ordinary course of business without notice or a

hearing."  Under section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice and a hearing, there

shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of

preserving the estate . . . ."

43.      The Debtors believe that the Intercompany Transactions occur "in the ordinary

course of business" within the meaning of section 363(c)(1) of the Bankruptcy Code.

Nevertheless, out of an abundance of caution, the Debtors seek express authority to engage in such

transactions on a postpetition basis.  The Intercompany Transactions are the type of transactions

that are common among many complex business enterprises that operate through multiple

affiliates.  The Intercompany Transactions are integral to the Debtors' ability to operate their

business.  Requiring the Debtors to modify their current practices would be a costly and time-

US 9124063

consuming undertaking, distracting the Debtors and their employees from the important task of continuing to operate the Debtors' business in the ordinary course and proceeding towards a timely exit from chapter 11.  Accordingly, out of an abundance of caution, the Debtors request express authority to engage in such Intercompany Transactions postpetition.

44.     To ensure that each Debtor will not fund the operations of another entity at the expense of such Debtors' creditors, the Debtors request, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, that all valid postpetition Intercompany Claims be accorded administrative expense status.  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors as well as the respective non-debtor entities and their stakeholders.

45.     Courts in this district and others have granted administrative expense status to postpetition intercompany claims in similar chapter 11 cases.  *See, e.g.*, *In re Carlson Travel, Inc.*, No. 21-90017 (MI) (Nov. 12, 2021); *In re Basic Energy Serv., Inc.*, No. 21-9002 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2021);  *In re Sundance Energy, Inc.*, No. 21-30882 (DRJ) (Bankr. S.D. Tex. March 9, 2021); *In re McDermott International, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex. Jan. 23, 2020).  For the reasons set forth above, similar relief is warranted here.

## REQUEST FOR IMMEDIATE RELIEF

46.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." FED. R. BANKR. P. 6003. For the reasons discussed herein and in the First Day Statement, authorizing the Debtors to continue to operate using their Cash Management System and continue to perform intercompany transactions consistent with historical practice, as well as

20

US 9124063

granting the other relief requested herein, is critical to enabling the Debtors to effectively transition to operating as chapter 11 debtors and to preserve their business operations. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations and significantly impact the Debtors' ability to reorganize swiftly and efficiently. For the reasons discussed herein and in the First Day Statement, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

47. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

48. For the avoidance of doubt, nothing in this Motion is intended to be, nor should it be construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) an impairment or waiver of the Debtors' or any other party-in-interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, or (e) a waiver of the Debtors' or any other party in interest's rights. In addition, nothing in this Motion or the relief requested herein should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

US 9124063

## NOTICE

49.    Notice of this Motion has been provided by delivery to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) Beeman Ranch, HBI's Secured Lender; (c) Beck Redden LLP, as counsel to Beeman Ranch; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (f) the Internal Revenue Service; (g) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; and (h) FNB (collectively, the "***Notice Parties***").  In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

No prior motion for the relief requested herein has been made to this Court or any other court.

US 9124063

### PRAYER

The Debtors respectfully request that the Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibits A** and **B**, respectively, and grant them such other and further relief to which the Debtors may be justly entitled.

Dated:  August 2, 2022
Houston, Texas

/s/  *Harry A. Perrin*
**VINSON & ELKINS LLP**
Harry A. Perrin (TX 15796800)
Kiran Vakamudi (TX 24106540)
845 Texas Avenue
Suite 4700
Houston, TX 77002
Tel:  713.758.2222
Fax: 713.758.2346
hperrin@velaw.com; kvakamudi@velaw.com

- and -

David S. Meyer (*pro hac vice* admission pending)
Zachary A. Paiva (*pro hac vice* admission pending)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; zpaiva@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

US 9124063

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 2, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 /s/ Harry A. Perrin
Harry A. Perrin

24

## **EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90127 (DRJ)** |
| | § | |
| **HEARTBRAND HOLDINGS, INC.,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| | § | **(Joint Administration Requested)** |
| **Debtors.**[1] | § | **Re: Dkt. No. ____** |

**INTERIM ORDER (I) AUTHORIZING THE**
**DEBTORS TO (A) CONTINUE TO OPERATE THEIR**
**CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK**
**ACCOUNTS (B) CONTINUE USING EXISTING CHECKS AND BUSINESS**
**FORMS, (C) MAINTAIN THEIR CORPORATE CARD PROGRAM, AND**
**(D) CONTINUE INTERCOMPANY TRANSACTIONS, (II) PROVIDING**
**ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR POSTPETITION**
**INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] filed by the above-referenced debtors and debtors in possession (collectively, the "***Debtors***") for entry of an interim order (the "***Interim Order***") (i) authorizing the Debtors to: (a) continue to operate their Cash Management System and maintain existing Bank Accounts; (b) continue using their existing Checks and Business Forms; (c) maintain Corporate Card Program; and (d) continue to engage in Intercompany Transactions, (ii) providing administrative expense priority for postpetition Intercompany Claims; and (iii) granting related relief, all as more fully set forth in the Motion and in the First Day Statement; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  HeartBrand Holdings, Inc. (2575); American Akaushi Association, Inc. (3331).  The location of the Debtors' service address is:  P.O. Box 309, Flatonia, TX 78941.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1. The final hearing ("*Final Hearing*") on the Motion shall be held on _____, 2022, at __:__ _.m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _____, 2022, and shall be served on the Notice Parties.

2. The Debtors are authorized to (a) maintain the Cash Management System, (b) maintain and continue to use any or all of their existing Bank Accounts to the Motion; (c) deposit funds in and withdraw funds from any of the Bank Accounts reflected in the Motion by all usual means, including, but not limited to, checks, wire transfers, ACH transfers and debits, electronic funds transfers, and other debits; (d) open and close new debtor-in-possession bank accounts as reflected below, *provided,* that the Debtors give notice to the U.S. Trustee and any statutory committee that may be appointed in these chapter 11 cases of any material change in their Cash Management System.  The Debtors are authorized to open new bank accounts; *provided, however*, that all accounts opened by the Debtors on or after the Petition Date shall be at depositories that are (i) insured by the FDIC or the Federal Savings and Loan Insurance Corporation, (ii) designated as an authorized depository by the U.S. Trustee pursuant to the U.S.

2

Trustee Guidelines, and (iii) with a bank that agrees to be bound by the terms of this Order; *provided further, however,* that such opening shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee and any statutory committee.

3.      The Debtors' Bank is authorized to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on the Debtor's Bank Accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtor's Bank Accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

4.      Any of the Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment.  Any of the Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this Interim Order or any other order of this Court.  The Banks shall not have any liability to any party on account of (a) following the Debtors' instructions or relying on the Debtors' representations as to any check or other item that may be honored or as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized

3

such prepetition check or item to be honored, or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

5.      The Debtors are authorized to use, in their present form, the Checks and Business Forms, without reference to their status as debtors-in-possession, *provided*, that once the Debtors' existing check stock has been exhausted, the Debtors shall include, or direct others to include, the designation "Debtor in Possession" and the corresponding bankruptcy case number on all Checks and Business Forms as soon as it is reasonably practicable to do so, and with respect to any Business Forms that exist or are generated electronically, the Debtors shall use reasonable efforts to ensure that such electronic Business Forms are clearly labeled "Debtor in Possession" within 10 business days.

6.      The Debtors are authorized to continue the Corporate Card Program subject to the terms and conditions thereof and to pay any prepetition or postpetition amounts related thereto.

7.      The Debtors are authorized to enter into and engage in postpetition Intercompany Transactions in the ordinary course of business consistent with historical practice.  Pursuant to section 503(b)(1) and 364(b), all Intercompany Claims as a result of any ordinary course postpetition Intercompany Transactions are hereby accorded administrative expense priority status.  In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the postpetition Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.  The Debtors shall make such records available upon request by the U.S. Trustee and any statutory committee appointed in these chapter 11 cases.  To the extent that the transfers within the Cash Management System are disbursements, they will be noted and reflected on the monthly operating reports.

US 9124063

8.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

9.      To the extent any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until September 15, 2022, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; provided that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the 45-day time period referenced above by agreement with the U.S. Trustee or Court order.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

11.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Interim Order or the Motion is intended to be, nor should it be construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, or (e) a waiver of the Debtors' or any other party in interest's rights.  In addition, nothing in this Interim Order or the Motion should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

12.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

13.     The requirements of Bankruptcy Rule 6004(a) are waived.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon entry of this Interim Order.

15.     The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.


Dated: _____, 2022
Houston, Texas

_____
**DAVID R. JONES**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

6

US 9124063

**<u>EXHIBIT B</u>**

**Proposed Final Order**

US 9124063

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90127 (DRJ)** |
| | § | |
| **HEARTBRAND HOLDINGS, INC.,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| | § | **(Joint Administration Requested)** |
| **Debtors.**[1] | § | **Re: Dkt. No. ____** |

**FINAL ORDER (I) AUTHORIZING THE**
**DEBTORS TO (A) CONTINUE TO OPERATE THEIR**
**CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK**
**ACCOUNTS (B) CONTINUE USING EXISTING CHECKS AND BUSINESS**
**FORMS, (C) MAINTAIN THEIR CORPORATE CARD PROGRAM, AND**
**(D) CONTINUE INTERCOMPANY TRANSACTIONS, (II) PROVIDING**
**ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR POSTPETITION**
**INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] filed by the above-referenced debtors and debtors in possession (collectively, the "***Debtors***") for entry of a final order (the "***Final Order***") (i) authorizing the Debtors to: (a) continue to operate their Cash Management System and maintain existing Bank Accounts; (b) continue using their existing Checks and Business Forms; (c) maintain Corporate Card Program; and (d) continue to engage in Intercompany Transactions, (ii) providing administrative expense priority for postpetition Intercompany Claims; and (iii) granting related relief, all as more fully set forth in the Motion and in the First Day Statement; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  HeartBrand Holdings, Inc. (2575); American Akaushi Association, Inc. (3331).  The location of the Debtors' service address is: P.O. Box 309, Flatonia, TX 78941.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

US 9124063

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1.      The Debtors are authorized to (a) maintain the Cash Management System, (b) maintain and continue to use any or all of their existing Bank Accounts; (c) deposit funds in and withdraw funds from any of the Bank Accounts by all usual means, including, but not limited to, checks, wire transfers, ACH transfers and debits, electronic funds transfers, and other debits; (d) open and close new debtor-in-possession bank accounts, *provided,* that the Debtors give notice to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases.

2.      To the extent that sufficient funds standing in the Debtors' credit are available in each applicable Bank Account, the Banks are authorized to maintain, service, and administer the Bank Accounts in the ordinary course of business without the need for further order of this Court.

3.      Any of the Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment.  Any of the Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this Final Order or any other order of this Court.

US 9124063

4.      The Debtors are authorized to use, in their present form, the Checks and Business Forms, without reference to their status as debtors-in-possession, *provided*, that once the Debtors' existing check stock has been exhausted, the Debtors shall include, or direct others to include, the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks as soon as it is reasonably practicable to do so.

5.      The Debtors are authorized to continue the Corporate Card Programs subject to the terms and conditions thereof and to pay any prepetition or postpetition amounts related thereto.

6.      The Debtors are authorized to enter into and engage in postpetition Intercompany Transactions in the ordinary course of business consistent with historical practice.  Pursuant to section 503(b)(1) and 364(b), all Intercompany Claims as a result of any ordinary course postpetition Intercompany Transactions are hereby accorded administrative expense priority status.  In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the postpetition Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.  The Debtors shall make such records available upon request by the U.S. Trustee and any statutory committee appointed in these chapter 11 cases.

7.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

8.      To the extent any of the Debtors' Bank Accounts are not in compliance with the U.S. Trustee's requirements or guidelines, such non-compliance is hereby waived.

3

US 9124063

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

10.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Final Order or the Motion is intended to be, nor should it be construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, or (e) a waiver of the Debtors' or any other party in interest's rights.  In addition, nothing in this Final Order or the Motion should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

11.     The requirements of Bankruptcy Rule 6004(a) are waived.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon entry of this Final Order.

Dated: _____, 2022
Houston, Texas

_____
**DAVID R. JONES**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

4