# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-90127 (DRJ) |
| | § | |
| **HEARTBRAND HOLDINGS, INC**, *et al.*, | § | (Chapter 11) |
| | § | |
| | § | (Joint Administration Requested) |
| Debtors.[1] | § | (Emergency Hearing Requested) |

## DEBTORS' STATEMENT IN SUPPORT OF CHAPTER 11 FILING

HeartBrand Holdings Inc. f/k/a HeartBrand Beef, Inc. ("*HBI*," and together with its affiliates, the "*Company*") and its wholly-owned subsidiary, American Akaushi Association, Inc. ("*AAA*" and together with HBI, the "*Debtors*") hereby file this statement in support of filing petitions in each of these chapter 11 cases.

## INTRODUCTION

1. These chapter 11 cases are the result of the Debtors having no choice but to file for chapter 11 to preserve the value of the Debtors' enterprise. Faced with the inability to post additional security in an ongoing appeal of an unjust trial verdict in Texas state court, the Debtors find themselves out of options, out of time, and with only one path forward to maximize value for stakeholders—chapter 11. The Debtors intend to vigorously argue the appeal on the merits, and subsequently resolve these chapter 11 cases in a manner that preserves the value of the Debtors' enterprise for all of their stakeholders.

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: HeartBrand Holdings, Inc. (2575); and American Akaushi Association, Inc. (3331). The location of the Debtors' service address is: P.O. Box 309, Flatonia, TX 78941.

US

**BACKGROUND**

2. On August 1, 2022 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***").

3. The Company is a leading producer of Akaushi beef, a type of red Wagyu Japanese cattle known for its high-quality meat. A small number of Akaushi cattle were exported from Japan in the early 1990's and bred in Texas until the Company acquired the Akaushi herd in 2006. Since then, the Company has focused on growing the presence of Akaushi cattle and its business, while maintaining the integrity of the breed, the Company's large herd of Akaushi cattle, and HeartBrand beef products.

4. HBI is a privately held corporation incorporated in the state of Texas and holds 100% of the equity interests in AAA. HBI is a holding company with no independent operations, instead HBI operates its business through five wholly-owned operating subsidiaries, each of which is critical to the Company's operations and beef production process. AAA is a Texas corporation and a wholly-owned direct subsidiary of HBI. AAA seeks to enhance the Akaushi breed and provide breeders with assistance in market development, herd reporting, and herd management while maintaining certain registration and reporting rules regarding genetic testing and verification of bloodlines. All of the Company's subsidiaries' Akaushi cattle are registered to AAA, which is headquartered in Flatonia, Texas.

5. Each of HBI's other wholly-owned subsidiaries are not Debtors in these chapter 11 cases and are not parties to the Judgment (as defined below). Therefore, HeartBrand Beef Sales, Inc., HeartBrand Cattle, Inc., HeartBrand Feeders, Inc., and HeartBrand Management Services, Inc. are not affected by these chapter 11 cases at this time. Customers and vendors of HeartBrand

Beef Sales, Inc., HeartBrand Cattle, Inc., and HeartBrand Feeders, Inc., can continue to expect the top-quality beef, exceptional cattle, and preeminent genetics to which they are accustomed. These non-debtor operating subsidiaries are well-capitalized, have been historically profitable, and should continue to be able to operate their businesses, pay all of their obligations in a timely manner, and generate sufficient excess cash flow to fund the costs of the administration of these chapter 11 cases.

6. Ronald Beeman has been the Chairman of the Board of Directors of HBI from the time of its formation in 2006. Mr. Beeman has extensive experience in and around the cattle, beef, and meat-packing industries and has owned cattle and been involved in meat production for more than 35 years. Mr. Beeman also serves as the Chairman of AAA.

## CHAPTER 11 CASES

7. These chapter 11 cases stem from an underlying dispute involving a leverage play by Twinwood Cattle Company, Inc. ("***Twinwood***") to breach and re-trade a 2016 settlement agreement. Twinwood and HBI initially entered into a contract in 2009, under which Twinwood agreed to purchase Akaushi cattle from HBI for breeding and meat production and contribute certain breeding and performance data to HBI's efforts to develop the Akaushi breed. In 2018, Twinwood filed a lawsuit in the 458th District Court in Fort Bend County, Texas (the "***Trial Court***"), alleging that AAA failed to provide Twinwood with access to certain genetic testing data to which Twinwood claimed it was entitled. Twinwood subsequently amended its petition multiple times, adding HBI and Ronald Beeman as defendants, and adding claims that the Debtors and Ronald Beeman had made misrepresentations regarding the cattle sold to Twinwood in 2009.[2]

---

[2] Twinwood alleged that it failed in its 2016 attempt to convert from an Akaushi cattle producer to an international genetics breeding operation, and blamed AAA for Twinwood's failure to become the nation's leading seller of

The defendants brought counterclaims against Twinwood and the head of its cattle breeding operation, Dr. Jose Antonio Elias Calles.[3]  After an evidentiary trial, a jury returned a verdict in favor of Twinwood and on September 17, 2021, the Trial Court issued a judgment of more than $28 million against AAA.  HBI and Ronald Beeman were deemed to be jointly and severally liable for portions of the judgment (the "*Judgment*").[4]  The Debtors and Ronald Beeman have appealed the verdict and Judgment to the Fourteenth Court of Appeals of the State of Texas (the "*Texas Court of Appeals*") and intend to demonstrate how numerous errors by the Trial Court resulted in an unfair trial and an incorrect outcome.

8. On November 10, 2021, the Debtors posted a bond in the amount of $6,708,183.90 to supersede and stay execution of the Judgment pending appeal based upon the Company's calculation of net worth at $13,416,167.80[5] as reflected on the Company's consolidated balance

---

wagyu and Akaushi genetics.  Twinwood then sought to impose liability on HBI, AAA's parent company, for the failure of Twinwood's hoped-for business.  As described in papers presented to the Trial Court, these claims lacked factual foundation and even breached promises by Twinwood that it would not bring claims of this kind.

[3] HBI has a long and painful history with Dr. Calles.  Dr. Calles had been one of the owners of the Akaushi herd in the early 2000's.  When HBI was formed to acquire the herd from Dr. Calles' heavily indebted business, HBI hired Dr. Calles to serve as HBI's president and care for the Akaushi cattle, which he did until 2010.  The day after he resigned from HBI, he signed a contract to work for Bear Ranch, L.L.C. ("*Bear Ranch*"), an Akaushi breeder with whom Dr. Calles had previously dealt on HBI's behalf.  Like Twinwood, Bear Ranch was under contract to use HBI genetics but later desired to end that contract and compete with HBI.  In 2012, after Dr. Calles began working for Bear Ranch, Bear Ranch sued HBI in the U.S. District Court for the Southern District of Texas, seeking to invalidate its contract with HBI.  That suit resulted in Bear Ranch being held liable for fraudulent inducement after five years of litigation.  *See Bear Ranch, L.L.C. v. HeartBrand Beef, Inc.*, 885 F.3d 794, 800 (5th Cir. 2018).  Dr. Calles then went to work full-time for Twinwood in 2016.  Subsequently, Twinwood and HBI terminated their contractual relationship and released claims against one another, but despite that release, Twinwood sued HBI in 2018.

[4] The Judgment was entered solely against AAA, HBI, and Mr. Beeman as follows: (i) AAA was adjudicated liable for $28,183,582.18 and post-Judgment interest; (ii) HBI was adjudicated jointly and severally liable for $25,583,582.18 and post-Judgment interest; and (iii) Mr. Beeman was adjudicated jointly and severally liable for $1,432,136.99 and post-Judgment interest.  The Company's remaining operating subsidiaries are not liable under the Judgment.

[5] Tex. Civ. Prac. & Rem. Code § 52.006(b), (b)(1), the Texas Rules of Appellate Procedure, and/or applicable case law establish that the amount of supersedeas bonds are based upon a calculation of net worth under Generally Accepted Accounting Principles ("*GAAP*").  Under applicable law, a judgment debtor is required to post a bond

4

sheet and a sworn affidavit of its controller, Carol Brown.[6] Twinwood subsequently challenged the posted security and after an evidentiary hearing, the Trial Court ruled that the Debtors were required to post additional security, based upon a revised estimate of the Company's net worth, which the Trial Court increased to $35,791,168. The Trial Court made this determination based on the following findings: (i) the treatment of a $20 million promissory note between HBI, as payor, and Beeman Ranch, a farm and ranch that Mr. Beeman owns and operates, as payee (the "**Promissory Note**")[7] as equity, and (ii) including both a $1.5 million dividend distributed to HBI's equityholders and $875,000 of share purchases in the overall net worth of HBI. On July 12, 2022, the Texas Court of Appeals affirmed the Trial Court's ruling in part, finding that the Company's net worth should be calculated at $34,916,168 (the Trial Court's amount less the $875,000 share purchase) and that the Debtors were required to post an additional $10,749,900.10 of aggregate security within twenty days to stay execution of the Trial Court's Judgment (*i.e.*, by August 1, 2022).

9. On July 18, 2022, the Debtors and Mr. Beeman filed a motion for temporary relief/stay and a petition for writ of mandamus review before the Supreme Court of Texas to prevent Twinwood from enforcing the Judgment against them before August 2, 2022. Twinwood

---

or security in an amount no greater than one half of its net worth (calculated under GAAP) in order to supersede a judgment.

[6] Mr. Beeman, in his individual capacity, also posted $1,503,743.84 of cash as security to bond his individual portion of potential joint and several liability which included his adjudicated Judgment amount, pre-Judgment interest, and one year of post-Judgment interest.

[7] The Promissory Note accrues interest at a rate of 2.91% per annum, compounded monthly, and has a maturity date of August 14, 2028. Mr. and Mrs. Beeman currently hold 40% of the Promissory Note, while certain Beeman family trusts hold the remaining 60%. As of the Petition Date, the outstanding principal balance of the Promissory Note is $20,000,000 and is the Company's sole funded debt obligation.

objected to the requested relief and argued that HBI could feasibly post the additional $10,749,900.10 security. The Texas Supreme Court denied the requested relief on July 29, 2022.

10. As noted above, the non-debtor operating subsidiaries are well-capitalized, have been historically profitable, and should continue to be able to operate their businesses, pay all of their obligations in a timely manner, and generate sufficient excess cash flow to fund the costs of the administration of these chapter 11 cases. However, the Company does not have sufficient liquidity to post the remaining $10,749,900.10 of additional security without significant risk of harm to the Company's operations and the interests of its stakeholders. Out of options and faced with the approaching deadline by which Twinwood may execute on the Judgment, the Debtors determined that filing these chapter 11 cases would maximize their chances of preserving the value of the Debtors' enterprise in the best interests of the Debtors, their estates, and the Debtors' various stakeholders. The Debtors are prepared to do so by vigorously arguing the appeal before the Texas Court of Appeals and have filed these chapter 11 cases in a final effort to provide themselves the additional time necessary to be heard on the merits.[8] While the Debtors are confident they will prevail on the merits, should the Texas Court of Appeals rule unfavorably, the Debtors are prepared to pursue all alternatives available to them to maximize the value of the Company's enterprise which may include restructuring the Company's existing debts and exiting chapter 11 in an orderly fashion. The Debtors are prepared to work with all parties in interest to address these issues in the orderly administration of these chapter 11 cases in the days ahead.

---

[8] To that end, the Debtors intend to file a motion in the coming days to seek relief from the automatic stay to prosecute an appeal of the merits of the Trial Court's ruling before the Texas Court of Appeals.

US

## **CONCLUSION**

11. As set forth above, the Debtors filed these chapter 11 cases in a final effort to preserve their ability to operate as a going concern and are prepared to pursue all viable options to ensure the Debtors maximize the value of their enterprise.

*[Signature Page Follows]*

Dated:  August 2, 2022
Houston, Texas

/s/  *Harry A. Perrin*
**VINSON & ELKINS LLP**
Harry A. Perrin (TX 15796800)
Kiran Vakamudi (TX 24106540)
845 Texas Avenue
Suite 4700
Houston, TX 77002
Tel:  713.758.2222
Fax: 713.758.2346
hperrin@velaw.com; kvakamudi@velaw.com

- and -

David S. Meyer (admitted *pro hac vice*)
Zachary A. Paiva (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; zpaiva@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**

US